## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

| | | |
|---|---|---|
| CHARLES "RANDY" RICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-0022 |
| | ) | |
| WITT O'BRIEN'S, LLC, LEVETATED | ) | |
| CAREERS, INC. and PRIME UNIVERSAL | ) | |
| GROUP, LLC, | ) | |
| | ) | |
| Defendants, | ) | |

**APPEARANCES:**

**LEE J. ROHN, ESQ.**
LEE J. ROHN & ASSOCIATES
ST. CROIX, U.S. VIRGIN ISLANDS
  *FOR PLAINTIFF CHARLES RICH*

**ADAM G. CHRISTIAN, ESQ.**
OGLETREE DEAKINS LAW FIRM
ST. THOMAS, U.S. VIRGIN ISLANDS
  *FOR DEFENDANT WITT O'BRIEN'S USVI, LLC*

**KYLE R. WALDNER, ESQ.**
WALDNER LAW, P.C.
ST. THOMAS, U.S. VIRGIN ISLANDS
  *FOR DEFENDANT LEVETATED CAREERS, INC.*

**JENNIFER MILLER BROOKS, ESQ.**
HAMILTON, MILLER & BIRTHSIEL, LLP
MIAMI, FLORIDA
  *FOR DEFENDANT PRIME UNIVERSAL GROUP, LLC*

## <u>MEMORANDUM OPINION</u>

**MOLLOY, Chief Judge.**

  **BEFORE THE COURT** are the following motions:

1. Defendant Levetated Careers, Inc.'s ["Levetated"] Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim, filed on July 1, 2019. (ECF No. 18.);[1]

2. Defendant Witt O'Brien's LLC's[2] ["WOB"] Motion to Dismiss First Amended Complaint (ECF No. 19);[3] and

3. Defendant, Prime Universal Group, LLC ("Prime") Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 64.).[4]

For the following reasons, the Court will grant, in part, and deny, in part, Defendants'[5] motions.

## I. FACTUAL AND PROCEDURAL BACKGROUND[6]

On or about October 29, 2018, Levetated and Prime told Plaintiff that there was a lot of work for him in the U.S. Virgin Islands and, if he moved to St. Croix and agrees to the terms of the job of a Quality Assurance ("QA") inspector, he would be employed in the U.S. Virgin Islands for a long time and offered work in other locations when Prime moved to participate in other disaster recovery programs. Plaintiff received an email from Levetated's Human Resources, Jason Embry, letting him know he was hired.

On or about November 1, 2018, Plaintiff started working as a QA inspector for Prime in the U.S. Virgin Islands for the FEMA STEP Program, which was supervised by the lead contractor, WOB. Plaintiff was informed that his job was governed by Prime's policies and procedures that he had to read, as well as numerous documents he received, including a non-compete agreement with Levetated and Prime. Plaintiff's day-to-day work was managed and supervised by WOB, he wore WOB's photo identification badge, and he was held out to the public as WOB's QA inspector. Plaintiff's housing and transportation were managed by Prime and his payroll direct deposits and time keeping was handled by Levetated. Plaintiff received housing and a $400 per diem to work 70 hours per week at an hourly rate of $30, with time

---

[1] Plaintiff filed an opposition on July 22, 2019, (ECF No. 21), and Levetated filed a reply on August 8, 2019. (ECF No. 24.)

[2] On July 3, 2023, Witt O'Brien's USVI, LLC was substituted for Witt O'Brien's, LLC. (ECF No. 140.)

[3] Plaintiff filed an opposition on July 23, 2019, (ECF No. 22), and WOB filed a reply on August 5, 2019. (ECF No. 23.)

[4] Plaintiff filed an opposition on December 6, 2021, (ECF No. 65). Prime did not file a reply.

[5] The reference to "Defendants" in this Memorandum Opinion refers to all of the defendants collectively.

[6] The Court finds the following facts for purposes of the instant motions only.

and a half for all hours over 40 per week and shared paid transportation. Plaintiff's original contract was for three months work with Prime and WOB, but Defendants promised him that, if he worked well, he would continue to work and, after the jobs in the U.S. Virgin Islands were completed, he would go with the companies to other jobs in the States and on maintenance jobs for Prime.

Near the end of January 2019, Hugh Shows ("Shows"), an employee of Defendants, paid $20 to Plaintiff for a bet on a football game that he lost. About one or two weeks later, Shows lost a $100 bet with Plaintiff on a football game but failed to pay when Plaintiff requested cash. Thereafter, Shows sent Plaintiff emails and voice messages threatening to beat hm up. Tim Hicks of Levetated warned Plaintiff that Shows wanted to beat up Plaintiff. The next morning, Plaintiff reported the threats to Arthur Valdez ("Valdez"), an individual in Prime's human resources office. Valdezdid not respond other than to instruct Plaintiff to go to work. When Plaintiff was transported to the job site in the vehicle of AECOM, a firm implementing the FEMA STEP program for WOB, Shows opened the door and struck Plaintiff in the face. Shows was removed from the scene by the security personnel. Plaintiff and the AECOM driver went to WOB's office, and he was approached by WOB's Jim Folkstead, who told Plaintiff he was being placed on standby and to return to his room. None of the Defendants provided Plaintiff any medical assistance, nor did they record or investigate the incident.

A couple of hours after the incident, Plaintiff received a call from Defendants and was informed that he was fired and had to pack his bags and fly out that day. According to Plaintiff, Defendants collectively used their "demobilization policy" that denied Plaintiff his right to receive full pay for hours worked unless he left the island as soon as Defendants informed him that his employment was terminated. Plaintiff's letter of termination was sent to him by Levetated and copied to Prime. Prime provided Plaintiff his return ticket.

Plaintiff alleges that he would not have relocated to St. Croix to work for Defendants and start investing in real estate had he known that Defendants would ignore warnings about his safety on the job and terminate his employment for complaining about any workplace violence that he suffered. Plaintiff relied on Defendants' representations when he relocated

to St. Croix. At the time he was fired, Plaintiff was involved in purchasing and selling several real estate properties in the U.S. Virgin Islands about which he informed Defendants. WOB's termination of Plaintiff's employment also caused Plaintiff to lose his contract with Levetated, who was the agent of Prime, not of WOB.

Plaintiff filed a First Amended Complaint ("FAC" or "complaint") on June 17, 2019, alleging the following causes of action: (1) Count I, Fraudulent and/or Negligent Misrepresentation against all defendants; (2) Count II, Tortious Interference with Contracts against WOB; (3) Count III, Tortious Interference with Contracts against Prime; (4) Count IV, Collusion against all defendants; (5) Count V, Negligent Retention of Hugh Shows against all defendants; and (6) Count VI, Breach of Duty of Good Faith and Fair Dealing against WOB and Prime.

Defendants have filed motions to dismiss seeking a dismissal of the complaint based on Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

On a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, all well-pleaded allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020). Under the Rule 12(b)(6) standard, courts must determine whether the complaint contains sufficient "facts to state a claim to relief that is plausible on its face." *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020) (internal quotations and citation omitted). Evaluating a motion to dismiss under Rule 12(b)(6) involves three steps: (1) articulating the elements of the claim; (2) disregarding "formulaic recitation of the elements," other legal conclusions, and speculative allegations that "fail to cross the line between the conclusory and the factual"; and (3) evaluating "the plausibility of the remaining allegations." *Lutz v. Portfolio Recovery Assocs., LLC,* 49 F.4th 323, 327 (3d Cir. 2022).

### III. DISCUSSION

**A. Count I—Fraudulent and/or Negligent Misrepresentation**

Defendants argue that Plaintiff failed to identify the misrepresentation, when it was made and by whom, as required by Fed. R. Civ. P. 9(b), and he failed to allege that any statements were false or that any Defendant who made such statements knew they were false at the time they were made. Defendants contend that referring to them collectively is not sufficient to satisfy the heightened standard under Rule 9(b). Moreover, the alleged representations cannot form the basis of negligent misrepresentation because they are promissory in nature and relate to future events.

Plaintiff argues that he alleged sufficiently that: (i) Levetated, Prime, and WOB, as joint employers, made misrepresentations on or around October 29, 20218, namely, that there is a lot of work for him in the U.S. Virgin Islands and that, if he agrees to the terms of the QA job and works well, he would be employed for a long time and would be offered work at other locations; (ii) each Defendant knew or should have known that those allegations were not truthful; and (iii) upon Defendants' wrongful termination, he did not receive the promised compensation of housing and per diem and the compensation for 70 hours per week as promised, and he lost compensation from future work Defendants promised. Plaintiff asserts he also sufficiently alleged negligent misrepresentation. Alternatively, Plaintiff should be granted leave to satisfy any deficiencies identified by the Court.

## 1. Fraudulent Misrepresentation

The parties agree that the standard articulated in *Merchants Com. Bank v. Oceanside Vill., Inc.*, 64 V.I. 3 (V.I. Super. 2015), in which the court performed the analysis required by *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (2011), applies to a cause of action for fraudulent misrepresentation.[7] To state a claim for fraudulent misrepresentation, a plaintiff must show that: (1) the defendant made "a misrepresentation of fact, opinion, intention, or law"; (2) the defendant knew or had reason to know that the misrepresentation was false; (3) the misrepresentation "was made for the purpose of inducing another to act or refrain from acting on it"; and (4) plaintiff suffered pecuniary loss caused by her justifiable reliance on the misrepresentation. *Merchants Com. Bank,* 64 V.I. at 21–22. In alleging fraud or mistake,

---

[7] Plaintiff's argument that Levetated's motion as to Count I must be denied for failure to do a *Banks* analysis (ECF No. 21 at 2-3) is meritless because Levetated recited the elements of fraudulent and negligent misrepresentation articulated in the post-*Banks* case on which Plaintiff relies, *Merchants Com. Bank*, 64 V.I. 3.

a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff is required to "allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Generally, in a multi-defendant case, "each defendant is entitled to be apprised of the roles they each played in the alleged scheme, and absent a compelling reason, a plaintiff is not normally entitled to treat multiple corporate defendants as one entity." *Indianapolis Life Ins. Co. v. Hentz*, No. 1:06-CV-2152, 2008 WL 4453223, at *11 (M.D. Pa. Sept. 30, 2008).

As to Levetated and Prime, Plaintiff asserts that, "[o]n or about October 29, 2018," Levetated and Prime told him that, "if he moved to St. Croix and agreed to the terms of the job of Quality Assurance House Inspector as delineated by Defendants, then Plaintiff would be gainfully employed in the V.I. for a long time and be offered work in other locations when Defendant Prime moved to participate in other disaster recovery programs." (ECF No. 17 ¶ 16.) As to WOB, Plaintiff asserts that WOB "falsely represented to Plaintiff that when it moved on to other disaster recovery jobs, he could have work with them in other locations, which Plaintiff relied upon." (*Id.* ¶ 55.) Plaintiff alleges that he left gainful employment, moved to St. Croix and started investing in real estate in reliance on the Defendants' representations, which Defendants knew or should have known were untrue, resulting in pecuniary damages. (*Id.* ¶¶ 65-68.) Plaintiff identified Levetated and Prime as the makers of specific statements to him on October 29, 2018, on which he allegedly relied when he relocated to St. Croix to commence working on November 1, 2018, a few days after the statements were made, he alleges that Defendants fired him (*id.* ¶ 51) and they knew or should have known that their statements were untrue (*id.* ¶ 67). Although Plaintiff does not identify a specific person who made the statements, Plaintiff identifies the entity, the date the statements were made, and the nature of the allegedly fraudulent statements. While the Plaintiff does not specifically identify the person who made the statement, the Court finds that these allegations are sufficient to satisfy the Rule 9(b) standard with respect to Plaintiff's fraudulent misrepresentation cause of action against Levetated and Prime.

However, Plaintiff's allegations against WOB are insufficient under the Rule 9(b) standard because Plaintiff did not allege when WOB made the alleged misrepresentation asserted in FAC's paragraph No. 55, namely, that "when it moved on to other disaster recovery jobs, he could have work with them in other locations." In his chronological recitation of the events in the FAC, Plaintiff did not make any allegations that he had personal contact with WOB prior to commencing his work as a QA inspector on November 1, 2018, when his day-to-day work started to be managed and supervised by WOB. (*Id.* ¶¶ 17, 22.) There are also no allegations that Plaintiff received any written employment-related documents from WOB or that he was even aware of WOB or its role with respect to his future employment as a QA inspector prior to his relocation to St. Croix. The date of the misrepresentation is a material fact relevant to Plaintiff's allegation of detrimental reliance on it. The Court finds that dismissal without prejudice with leave to amend is warranted with respect to Plaintiff's fraudulent misrepresentation cause of action against WOB.

### 2. <u>Negligent Misrepresentation</u>

To establish negligent misrepresentation, a plaintiff must show that: (1) the defendant provided false information for the plaintiffs guidance; (2) the defendant did that in the course of its business; (3) the defendant failed "to exercise reasonable care or competence in obtaining or communicating the information"; (4) the plaintiff justifiably relied on the information; and (5) the plaintiff's "reliance caused pecuniary harm." *Fuller v. Roswell Properties LLC, Ltd.*, No. ST-16-CV-438, 2018 WL 1176867, at *5 (V.I. Super. Mar. 5, 2018). The "alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." *Ainger v. Great Am. Assurance Co.,* No. CV 2020-0005, 2022 WL 4379794, at *9 (D.V.I. Sept. 22, 2022) (citation omitted) (internal quotation marks omitted). "Courts have recognized that "[t]his requirement is rooted in the principle that '[i]t is impossible to be negligent in failing to ascertain the truth or falsity of one's own future intentions.'" *Chestnut v. Goodman*, 59 V.I. 467, 476 (2013) (citation omitted).

The Court finds that the alleged misrepresentations are promissory in nature, as Plaintiff himself alleges, *i.e.*, "Defendants promised him that if he worked well that he would

continue to work" and "he would go with the companies to other jobs." (*Id.* ¶ 33.) The promissory nature of the alleged misrepresentations is fatal to Plaintiff's negligent misrepresentation cause of action. *Chestnut*, 59 V.I. at 477 (concluding that, "because this alleged misrepresentation was promissory, 'relating to future events that might never come to fruition,' it could not form the basis of negligent misrepresentation") (citation omitted.) Accordingly, dismissing the negligent misrepresentation cause of action for failure to state a claim is warranted.

### B. Counts II and III— Tortious Interference with Contracts Claims against WOB and Prime

WOB and Prime argue that Plaintiff failed to allege the existence of a contract between Plaintiff and a third party, given that he alleged that all Defendants are his employers and that WOB and Prime interfered with his alleged contracts with all Defendants, and he failed to specify any contract with the STEP program and only alleges unspecified real estate deals. Moreover, Plaintiff failed to allege any intentional or improper interference.

Plaintiff argues that he sufficiently alleged that Defendants knew about his real estate transactions on St. Croix and they terminated his employment using: (i) improper means, namely, Levetated's demobilization policy requiring Plaintiff to leave the Virgin Islands the same day or lose full pay for hours worked, which prevented Plaintiff from closing the ongoing real estate deals; and (ii) improper motive, namely, to get rid of plaintiff because of the assault by Shows. Plaintiff contends that by invoking Levetated's demobilization policy, WOB and Prime interfered with Plaintiff's employment with Levetated.

In order to prevail on a claim for tortious interference with contract, a plaintiff must show: "(1) the existence of a contract between the plaintiff and a third party; (2) that the defendant knew of that contract; (3) that the defendant interfered with the contract using improper means or with an improper motive; and (4) that the plaintiff was damaged as a result*." Donastorg v. Daily News Publ'g Co.*, 63 V.I. 196, 288 (V.I. Super. 2015).

Plaintiff's allegations that he "was involved in buying and selling several V.I. real estate properties" (ECF No. 17 ¶ 57), Defendants "interfered with his ability to pursue and close the deals" (*id.* ¶ 58), and Plaintiff "began investing in real estate" (*id.* ¶ 66), are insufficient to plausibly state the existence of a contract to purchase or sell real estate

between Plaintiff and a third party. Plaintiff's assertion in his opposition to the motions that WOB and Prime used improper means – invocation of Levetated's demobilization policy – is inconsistent with his allegation in the FAC that "Defendants collectively used their 'demobilization policy.'" (*Id.* ¶ 52). While a plaintiff may allege inconsistent facts in a complaint, Plaintiff's failed to allege any plausible facts that would suggest that WOB and/or Prime knew that a contract existed with a third party or that WOB and/or Prime improperly interfered with those contracts. Accordingly, the Court finds that Plaintiff failed to state a claim for tortious interference with contracts, warranting dismissal of Counts II and III against WOB and Prime, respectively.

### C. Count IV—Collusion

Levetated,[8] WOB, and Prime argue that there is no civil tort of collusion in this jurisdiction. Defendants further argue that Plaintiff's allegations that Defendants colluded with each other to deny Plaintiff's employee rights by claiming he was the "legal" employee of Levetated and by invoking their "demobilization policy" against him, are too vague and conclusory to be actionable, and he failed to identify his employee rights that have been affected or the manner in which each Defendant colluded.

Plaintiff argues that, while not setting forth the elements of a claim of collusion, the Virgin Islands Supreme Court has recognized such a claim in *Bryan v. Fawkes*, 61 V.I. 416 (V.I. 2014), and the Court should apply the Restatement (Second) of Torts § 876(a), (b), and (c) as the soundest rule for establishing claims of collusion in the U.S. Virgin Islands. Plaintiff contends that he sufficiently plead that each Defendant colluded with other Defendants to deny Plaintiff's rights by claiming he was the legal employee of Levetated and using the demobilization policy to deny him the full pay for the work already performed and to force him to leave St. Croix the same day he was terminated. Alternatively, each Defendant

---

[8] Levetated asserts in footnote 3 of its brief that, "[t]o the extent that this vague claim is simply duplicative of other claims in the FAC, it must be dismissed for that reason too," citing Fed. R. Civ. P. 12(f). (ECF No. 18 at 8.) The Court will not consider Levetated's assertion because "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 (3d Cir. 1997).

breached its duty to Plaintiff and gave substantial assistance to other Defendants in collectively carrying out the demobilization policy.

"[A]lthough . . . this jurisdiction has not explicitly identified collusion as a cause of action and . . . not all jurisdictions acknowledge collusion, the Supreme Court of the Virgin Islands has implied its willingness to recognize collusion as a cause of action." *Scully v. Peterson*, No. ST-16-CV-196, 2018 WL 4348345, at *4 (V.I. Super. Jan. 25, 2018) (quoting *Arvidson v. Buchar*, 2017 WL 3670198, at *6, 2017 V.I. LEXIS 21, at *13-14 (V.I. Super. Ct. Feb 2, 2017) (citing *Bryan v. Fawkes*, 61 V.I. 416, 475-76, 2014 WL 5409110, 2014 V.I. Supreme LEXIS 53)).

The implied willingness of the Virgin Islands Supreme Court to recognize collusion as a cause of action does not establish the existence of that cause of action or provide a basis for the federal district court to adopt collusion as a cause of action in the Virgin Islands. Additionally, the Court finds that Plaintiff's reliance on the Superior Court of the Virgin Islands' *Banks* analysis to determine the elements of the common law civil conspiracy cause of action in *Isaac v. Crichlow*, 63 V.I. 38 (V.I. Super. 2015), and the elements of the "cause of action of aiding and abetting a tort in the civil context" in *Guardian Ins. Co. v. Est. of Knight-David*, No. ST-08-CV-189, 2018 WL 4352114 (V.I. Super. May 29, 2018), is improper and not supported by any binding authority. Plaintiff failed to explain why he elected to use civil conspiracy and aiding and abetting and not some other causes of action for his proposed rule for the elements of collusion cause of action in the Virgin Islands. Accordingly, the Court finds that dismissal of Count IV is warranted.

### D.  Count V—Negligent Retention of Hugh Shows

Levetated and Prime argue that the Superior Court of the Virgin Islands has addressed the elements of a claim for negligent retention, citing *Bell v. Radcliffe*, 2015 WL 5773561 (V.I. Super. 2015). WOB argues that the majority rule appears to track Chapter 15, Sections 410 through 429 of the Restatement (Second) of Torts concerning employer non-liability for the torts of an independent contractor and the exceptions to that rule. Each Defendant asserts that Plaintiff's allegations are insufficient to state a claim for negligent retention and that such a claim is barred by the Virgin Islands Workers Compensation Act ("VIWCA").

Plaintiff argues that, in light of the absence of the Virgin Islands Supreme Court authority post-*Banks*, the soundest rule for the Virgin Islands is to adopt Section 317 of the Restatement (Second) of Torts and the approach recognized in the district court case, *Chase v. Virgin Islands Port Auth.*, 3 F.Supp.2d 641 (D.V.I. 1998). Plaintiff contends that the VIWCA does not bar his negligent retention cause of action because none of the Defendants asserted or proved that it is an employer insured under VIWCA.

### 1. **Affirmative Defense—VIWCA**

The VIWCA provides that, "[w]hen an employer is insured under this chapter, the right herein established to obtain compensation shall be the only remedy against the employer." 24 V.I.C. § 284. VIWCA provides for the Government Insurance Fund, which was created "for the purpose of insuring employers against liabilities under this chapter and of assuring to the persons entitled thereto the compensation provided by this chapter" and is "applicable to the payment of losses sustained on account of injuries and to the payment of expenses in the manner provided in this chapter." 24 V.I.C. § 265. "VIWCA immunity is a waivable affirmative defense." *Edward v. GEC, LLC*, 67 V.I. 745, 763 (2017).

Defendants did not reply to the Plaintiff's argument that they failed to assert and prove that they are insured under VIWCA. The Court finds that each Defendant failed to establish its affirmative defense by failing to prove that it is an employer insured under VIWCA. This is an affirmative defense not suited for dismissal under Rule 12(b)(6).

### 2. **Negligent Retention**

"It is . . . the role of the Virgin Islands Supreme Court to say what the law of the territory is." *Pichardo v. Virgin Islands Com'r of Lab.*, 53 V.I. 936, 947, 613 F.3d 87, 94 (3d Cir. 2010). "[T]he Virgin Islands Supreme Court 'has yet to speak to the elements required to sustain claims of negligent hiring, training, retention, or supervision of an employee.' *Bell v. Radcliffe*, No. ST-13-CV-392, 2015 WL 5773561, at *11 (V.I. Super. Apr. 30, 2015) (quoting *Brunn v. Dowdye,* No.2011–0085, 2013 WL 5609326, at *6 n. 10 (VI. Oct. 11, 2013).

This Court recognizes the *Banks* analysis performed by the Superior Court in *Bell v. Radcliffe*, No. ST-13-CV-392, 2015 WL 5773561 (V.I. Super. Apr. 30, 2015), and establishing the elements for a cause of action for negligent retention as: "(1) the existence of an

employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing plaintiffs injuries; and (5) the employer's negligence in hiring or retaining the employee was the proximate cause of the plaintiff's injuries." *Id.* at 11; *see Canton v. Gov't of Virgin Islands*, No. SX-13-CV-42, 2016 WL 9454118, at *5 (V.I. Super. Apr. 4, 2016) (adopting the elements articulated in *Bell* as applicable to sustain claims of negligent hiring, training, retention, or supervision of an employee.) The concurs with the analysis in *Bell* and will adopt its *Banks* analysis findings.

Plaintiff alleges that Shows was "an employee of the Defendants," (ECF No. 17 ¶ 34), who struck Plaintiff in the face after Plaintiff requested that Shows pays in cash $100 that Shows lost in a bet on a football game with Plaintiff. (*Id.* ¶¶ 34-36, 41-42.) Plaintiff asserts that, despite reporting to Prime Shows' messages threatening to beat up Plaintiff, Prime failed to investigate and instructed Plaintiff to go to work. (*Id.* at ¶¶ 37-40). Plaintiff's allegations that Shows had a propensity for violence when he threatened to beat up Plaintiff and that Plaintiff reported the threats, of which Levetated was aware, to Prime are sufficient to allege plausibly that Defendants had knowledge of Shows' incompetence, namely his propensity for violence. Plaintiff further alleges that notwithstanding Plaintiff's reports, Defendants failed to take any action and was later struck in the face by Shows when he was directed to go to work. Although Plaintiff did not inform WOB directly of the threats he received from Shows, constructive knowledge may be inferred from the allegations that Defendants were joint employers, and it was WOB who told Plaintiff he was being out on standby and return to his room immediately after the incident. Accordingly, based on these allegations, the Court finds that Plaintiff has sufficiently pled a plausible claim for negligent retention.

### E. Count VI—Breach of Duty of Good Faith & Fair Dealing against WOB and PRIME

Defendants argue that there is no implied duty to an at-will employee because such employee does not have a reasonable expectation of continued employment. Even if there is such a duty, Plaintiff's conclusory allegations that WOB and Prime violated Occupational Safety and Health Administration requirements to maintain a safe work environment are

insufficient to state a claim for relief under *Chapman v. Cornwall*, 58 V.I. 431, 441 (2013). Defendants contend that, even if Plaintiff was an employee as defined in the Virgin Islands Wrongful Discharge Act, the Superior Court of the Virgin Islands held in *Espersen v. Sugar Bay Club & Resort Corp.,* No. ST-14-CV-355, 2018 WL 3494658 (V.I. Super. July 18, 2018), that, in the employment context, the cause of action for a breach of the covenant of good faith and fair dealing has been abolished.

Plaintiff argues that he sufficiently alleged his claim for breach of implied duty of good faith under *Roebuck v. Virgin Islands Hous. Auth.*, 60 V.I. 137, 146 (V.I. Super. 2014), because all the facts in support of Plaintiff's "claim for negligent representation and intentional misrepresentation also meet the elements of breach of duty of good faith and fair dealing." (ECF No. 22 at 19; ECF No. 65 at 20.) According to Plaintiff, Defendants' reliance on *Chapman* is misguided because the Virgin Islands Supreme Court did not conduct the necessary analysis for determining Virgin Islands common law.

To prove a breach of duty of good faith and fair dealing, a plaintiff must establish: (1) the existence of a contract; and (2) "acts amounting to fraud or deceit on the part of the employer." *Chapman v. Cornwall*, 58 V.I. 431, 441 (2013) (quoting *Pennick v. V.I. Behavioral Serv., Inc.,* No.2006–0060, 2012 WL 593137, at *3 (D.V.I. App. Div. Feb. 22, 2012)).

Plaintiff's contention that Defendants' reliance on *Chapman* is misguided for lack of the *Banks* analysis in that case is rejected as meritless and unsupported by citation to any binding authority. *Remak v. Virgin Islands Water & Power Auth.*, No. ST-15-CV-662, 2017 WL 3122642, at *2 (V.I. Super. July 21, 2017) (recognizing that the Virgin Islands Supreme Court did not state in *Banks* that it will always conduct a *Banks* analysis to establish binding precedent and, "[a]fter *Banks*, the Supreme Court has relied on the Restatement without performing a *Banks* analysis on occasion"). The Virgin Islands Supreme Court in *Chapman* limited actionable conduct against an employer to "acts amounting to fraud or deceit on the part of the employer," *Chapman*, 58 V.I. at 441, and did not include conduct "otherwise inconsistent with the purpose of the agreement or the reasonable expectations of the parties," that the Superior Court included in *Roebuck*, 60 V.I. at 146.

Plaintiff failed to address Defendants' arguments, including that Plaintiff was an at-will employee and that he did not have any expectation of continued employment. There is no allegation in the complaint that any Defendant is an employer pursuant to the Virgin Islands Wrongful Discharge Act.[9]

Plaintiff relies entirely on his allegations in support of Count I, Fraudulent and/or Negligent Misrepresentation, to support his Count VI cause of action. That reliance is fatal to the first element of the Plaintiff's Count VI cause of action, the existence of a contract. Plaintiff alleges that fraudulent misrepresentations, namely, "if he moved to St. Croix and agreed to the terms of the job of Quality Assurance House Inspector as delineated by Defendants, then Plaintiff would be gainfully employed in the V.I. for a long time, and be offered work in other locations," (ECF No. 17 § 16), occurred prior to the commencement of the Plaintiff's employment. There is no allegation that any contract existed between Plaintiff and Defendants WOB and Prime at the time of the Defendants' alleged misrepresentation. Plaintiff's contention in his opposition to Prime's motion that he "has inferred an implied contract based on Prime's verbal promises, and the documents he had to sign for employment, as well as his performance of his part of the contract in relocating to the Virgin Islands," (ECF No. 65 at 20), is insufficient to allege the existence of a contract with Prime. In the FAC, Plaintiff alleged that "Defendants gave Plaintiff numerous employment documents including a Non-Compete Agreement denying him the right to compete with Levetated or Prime in providing labor in the Virgin Islands," (ECF No. 17 ¶ 20), and "Plaintiff had to read and initial Prime's Human Resources policies and was told his work as governed by the policies and procedures of Prime," (*id.* ¶ 21). Plaintiff did not allege that he signed any documents given to him by Prime or if he did so, when he signed them. Although reasonable inferences are drawn in favor of Plaintiff, *Watters*, 975 F.3d at 412, they cannot be made based on the facts not alleged in the FAC and alleged for the first time in the Plaintiff's opposition to the Prime's motion. Because Plaintiff failed to allege the existence of the

---

[9] The WDA defines "employer" as any person acting in the interest of an employer directly or indirectly that has employed five (5) or more employees for each working day in each of the twenty (20) or more calendar weeks in the two (2) year period preceding a discharge." 24 V.I.C. § 62.

contractual relationship with WOB and Prime at the time of the alleged misrepresentations, he failed to state a claim for breach of duty of good faith and fair dealing. Accordingly, Count VI will be dismissed for failure to state a claim.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Plaintiff has failed to state a claim on Counts I, II, III, IV, and VI of the FAC. The Court will grant Plaintiff leave to file an amended complaint to properly state a cause of action for fraudulent misrepresentation that conforms to the requirements of Rule 9(b) as stated in this Memorandum Opinion. The Court finds that Defendant has properly stated a claim for negligent retention in Count V. Thus, the Court will grant, in part, and deny, in part, the motions to dismiss.

An appropriate Order follows.


**Date:** October 5, 2023                    /s/ *Robert A. Molloy*
                                         **ROBERT A. MOLLOY**
                                         **Chief Judge**